We'll hear argument next in Case 18-489, Taggart v. Lorenzen. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. According to the Ninth Circuit below, a creditor's subjective good-faith belief categorically precludes any liability for discharge violations under the Code. All sides to this case now agree that the Ninth Circuit was wrong. There is no per se rule that courts can never provide relief when a creditor violates the discharge in good faith. But Respondents in the government now propose adopting a different kind of per se rule. This categorical rule would adopt a profoundly atextual, qualified immunity-like defense for the Code, declaring that courts can never provide relief so long as a creditor can identify any fair, reasonable ground for violating the discharge. This novel proposal has no foothold in this Court's traditional principles for enforcing injunctions or the Code's broad equitable authority under Section 105. There is no per se rule that excuses subjective or objective mistakes under the Code. Section 105 provides broad authority to enforce and restore the statutory discharge, and the Code bars all efforts to collect discharge debts, not only unreasonable ones. In taking the opposite position, Respondents in the government ignore the broad authority under Section 105 in the Code's overall scheme. They overstate the cost to creditors and they understate the cost to debtors. And they ignore the foundational importance of the fresh start. A discharge violation imposes real costs on other parties, and there is no basis for allocating the damage caused by the wrongdoer's violation to the protected class. Alitoson But in this case, isn't it the case, isn't it true that the State court and the Bankruptcy Court held that Taggart had returned to the fray, and that would therefore there would not have been a violation of the discharge? If those courts were correct, but they were wrong. Both the State court was reversed by the State appellate court, and the Bankruptcy Court was reversed by the Federal District Court. And I don't think it's enough the fact that they had some judicial decision-maker say that conduct was permitted. The question is, did it actually violate the Code? Isn't it what is the justification for holding somebody in contempt for doing something that two State courts have held was not a violation? Well, first Your Honor. Even if those courts turned out to be wrong. Well, even if they turned out to be wrong. But I think the justification is first, that the fact that someone says that something is permissible doesn't mean that it doesn't violate the Code and that it doesn't impose real costs on the protected class. The Section 105 doesn't have any exception for a good-faith error or for a reasonable error, and the fact that a court might agree, perhaps unreasonably, that that particular act was permitted doesn't make it so. And if Congress wanted to create that sort of good-faith or reasonableness defense, it presumably would have done so. And we know that because they did something similar in Section 362K. In 362K, Congress looked at automatic State violations. They're cut from the same cloth as the discharge. And they said that we're creating a bright-line rule where any violation is automatically subject to mandatory remedies for the full cost of the violation, including attorney's fees. So there's no reason to think that Congress Sotomayor's a sort of reverse problem. I understand your argument that the other side is permitting an end run around a district court's discretion if somebody continues in the fray, borrowing a pun. But it might have a good ground of doubt or a reasonable basis, but it really wasn't their motivation, and the district court held that. So that's one extreme. Yours is an extreme, too, because you want to impose strict liability on a code provision that doesn't where an order is not abundantly clear, because it tells you some debts are in place but others are not discharged. And secondly, in a situation where the code doesn't require a debtor to go back to the bankruptcy card to get clarification on all actions, only on some, and this wasn't one of them. So isn't there something wrong with your formulation of strict liability, too? Well, I hope not, Justice Sotomayor. I can try to convince you. Sotomayor, but assuming it is, assuming I think that the policy grounds are not as compelling as you think, then how do I square the belief that this requires more discretion than either of you are positing or want? Well, let me make our position very clear, because our position actually embraces the Court's discretion under Section 105. Our position is that if the discharge is violated, then under Section 105, a court may impose a remedial order to remedy the violation. It's in the Court's discretion. Now, the thumb on the scale would be in favor of full remedial relief precisely because of the damage to the discharge and the need to restore the benefits of the discharge. That's how you carry out the provisions of the code. It's a necessary and appropriate order. But it is absolutely in the Court's discretion. The Court can take into account the fact that the creditor had an excellent basis for thinking that this was true, that the creditor sought a determination under Rule 4007, which you're right, isn't mandatory, but it provides a safe harbor for those creditors who are very worried about a genuinely disputed issue under the code. Sotomayor, but the problem with that is you're putting into the code something that's not required. You're basically telling debtors, if you think you're not covered, you can't do what the code permits you to do, you have to go for that safe harbor to be safe. Oh, absolutely not, Your Honor. What we're saying is that if a creditor is concerned, a creditor can go forward and collect a debt right away. And by the way, the vast majority of debts under the code are absolutely clear. They either clearly fall within the discharge or they clearly fall within one of the exceptions to the discharge. It's really a small category of cases where there's genuine confusion and good arguments on both sides. Okay. But in those cases, I'm still struggling with this for a slightly different reason. Not only may a creditor go to a State court to seek clarification in most issues — 523, I know, carves out a couple where you've got to go to the bankruptcy court — but Congress expressly gave concurrent jurisdiction to the States to do this. So it's not like it's any different of a safe harbor statutorily as far as Congress is concerned. They're equally good. So how do we account for that? Well, I think this is how you account for that, Justice Gorsuch. If a creditor goes to State court and seeks a pure declaratory judgment, they're saying, all I want to know is does this debt fall within the discharge, then that would put them on the same footing as Rule 4007. But that's not what most creditors do and it's not what the Respondents did here. They affirmatively sought to collect the discharged debt. So the — so if I understand your point, the error isn't that they failed to go to the bankruptcy court. The error is that they failed to seek a declaratory judgment rather than to collect on the debt. Well, no. The error is that they violated the discharge by affirmatively seeking to collect a discharge debt. Right. They should have sought a declaratory judgment from the State court. If they had done that, as opposed to trying to actually collect, then there would be both legal and practical differences. The legal difference is they wouldn't be taking an act that violates the discharge injunction. They wouldn't be trying to collect a debt. They'd be trying to seek a determination about what their rights are. Can't you do that at the same time? You go into the court and say, here's the debt that I have. I want to collect it, but first I want to make sure that I can do it. So I'd like a declaration of whether it's dischargeable or not, and if it is, or if it's not, then I'd like to go ahead with my suit. It seems to me that the court would like that to be done that way. It's certainly more efficient. Well, I don't think it is more efficient and half of that would be problematic and half of it wouldn't. The declaratory judgment part wouldn't. The problem is that the second you file an affirmative action in State court, you're imposing an entirely different brand of cost on the debtor. The debtor has to defend the entire action. They can't just show up and say, I want to litigate the discharge. They have to defend every element of the creditor's suit. Well, maybe they do, but I would think most State courts, State court judges in that situation would realize, well, we've got to clear up the dischargeability question first and do that. Well, that's not what happened here and it's, I think, not what will happen in a lot of cases. The ultimate point is that if a creditor is really concerned, then Congress has a clear scheme set out. You can go to Rule 4007 and you can seek clarification and guidance. If you don't want to seek that guidance, you don't have to. You can go to State court, but at that point you're imposing extra costs on the debtor. Rule 4, that for the the to back up a minute, the statute says that the order operates as an injunction and the traditional rules of contempt for injunctions suggest that a reasonable good faith belief that you weren't violating the order is sufficient. So why shouldn't that just follow squarely from the text, referring to operates like an injunction, the traditional rules of injunctions, therefore, your position of strict liability or something close to it doesn't work? Well, no, I think that the traditional rules for injunctions fall squarely on our side. If you look to the Court's decision in McComb, it said specifically if there's uncertainty in the decree, then the burden falls on the person who's supposed to comply with the decree to make sure that their conduct comports with it. And if they violate it, then that falls on their shoulders. They act at their own risk. And if they're confused about any uncertainty, then they can go and seek clarification from the court. That's the way it normally works. There is not a very confusing case, I have to admit, because sometimes it speaks in your language, and sometimes it speaks in Ms. Saharsky's language. And what are we to make of that? And I think I'll add on to this. I mean, I guess I was totally stunned that this wasn't clear what standards does apply for civil contempts and that people are citing these 100-year-old cases that are opaque. Well, I was a little stunned, too, Your Honor. But I think that what is clear in the bankruptcy context, the overwhelming rule from the majority of jurisdictions is the one that we've set out in our brief. It's that if you're aware of the discharge and you violate it, then you're subject to remedial order under Section 105. And if you're concerned about creating a new rule and wading into this morass, the easiest way to resolve it is to look to Section 105, which provides independent statutory authority to create any order, and that's broad language, that's necessary or appropriate for carrying out the code. Now, the code prohibits collection attempts. It doesn't just prohibit the actual collection of debts. It's the attempt to collect it. And the reason the code does that is it wants to make sure that debtors aren't put to the cost of defending suits that violate the discharge. The only way to restore the benefits under that decree, the benefits that Congress specifically provided debtors to ensure the fresh start is meaningful, is to pay back the debtor who did absolutely nothing wrong, who also had a good faith reason to think and an objectively strong reason to think the discharge did apply. To go back to the traditional rule, which you dispute, I understand that, but the fair ground of doubt principle, a lot of lower courts have applied that. And then you think about, well, what's the purpose here? Well, the purpose is contempt. It's a severe sanction. So before someone's found to be liable for such sanctions, you would want some clear intent and if they had a reasonable good faith belief that they weren't violating it, that's not usually something that we would say tough and still impose the sanctions. Do you agree with that or how do you deal with the overall purpose of the rule, the fair ground of doubt rule? Well, I think in a couple of different ways. The first is the fair ground of doubt rule appears in the Muller decision from the 1800s. And my friends respectfully misread it. But it's been applied by a lot of lower courts up to the present, correct? But they've applied it in a way that actually is consistent with our reading. They didn't take the Tevo decision from the Federal Circuit. The Ombud Federal Circuit looked at the principles both in McComb and in Muller, and they said that they specifically rejected the proposition that there is a good faith, objectively reasonable defense to the actual violation of the injunction. Where they incorporate the fair ground of doubt rule is they say, does the injunction actually apply? So it's not a rule that says you can violate an injunction and then you're excused because you had good faith. It's saying we'll construe the injunction not to reach your conduct. So that the ---- Are those really two different things? Well, I think they are two different things, because look at how it would play out here. Here you have a statutory injunction in the Bankruptcy Code, and I don't think courts are in a position to say that the Code means different things in different cases. In fact, any ambiguity in the Code is construed against an exception to the discharge. The exceptions are supposed to be true exceptions. So any creditor who looks and sees that a debt is sort of marginal, then at that point they are well on notice that their conduct could be subject to remedial order if they go ahead anyway. And the way that Congress accommodated those concerns is they created this Rule 4007. So it's perfectly fine for the creditors to go and invoke that rule, get the guidance if they want it, they don't have to, just as there is a declaratory judgment act and not everyone goes and invokes it before they breach a contract or violate a statute. It's entirely optional, but it's a way to make sure that if someone does in fact go forward and they are not sure what the Code means, then they are assuming the risk that they might be wrong. Alitoson You make it sound easy, but there are a lot of States on an amicus brief, a real cross-section of States, who say your Rule would really hamper them in real world collection efforts. How do you respond to that? Are they just wrong about that? Blackman I think they are wrong and I think the concerns are overstated. First, they don't account for the fact that the Rule, again, that we are not proposing something new. It's actually the government respondents that are proposing something new. This has been the majority Rule in the overwhelming number of jurisdictions nationwide. We haven't seen any concrete showing that this has a material effect on the States. The other problem with their submission is they are talking about all of the debts everywhere in all bankruptcies. And again, the Code is very precise. And when Congress said this operates as an injunction, they knew that it would operate as an injunction for the provisions they set out in Section 523 and 524. So Congress thought this was sufficiently precise. And it does, in fact, provide clear guidance for the vast majority of debts. We are talking about the very small subset where there is a genuine dispute. And where there is a genuine dispute, the States haven't said why they can't access Rule 4007. They suggested that in some cases it might be too expensive, but the only way that a $350 filing fee for something that is supposed to be streamlined and efficient and economical is actually too expensive is if they have no intent of litigating the issue anyway. And if that's the case, then any time they try to collect even under their own rule, a debtor could say this has been discharged and the State will back down. If they are actually willing to litigate an affirmative suit to collect that debt, they also should be willing to litigate under Rule 4007 and reduce the costs imposed on the debtor and imposed on other parties. And so I think if you look at the concerns that Congress had with the discharge, they understood that debtors exit bankruptcy often still in a fragile economic state. They have their finances a little bit back in order, but it's the rare debtor that can go and hire an attorney to resist the discharge unless they know that the attorney can be compensated at the end of the day if they prove right. Kagan. Mr. Geiser, the strength of your rule I would say is in the realm of compensatory damages, but here there were punitive damages as well. And what justification would there be for that? Well, to be clear, the punitive damages here, it was a $2,000 award. It's really not the bulk of this debate. And it was imposed for a very specific reason. After the State court award of, you know, $45,000 and $50,000 of attorney's fees was reversed, the Respondents didn't vacate it. They kept it on the books. And it took a specific order from the court to go and vacate that. And because the court had to go through that effort, he imposed a small $2,000 punitive damages, which he said was designed to coerce future compliance with the discharge. So, again, that's a very minor issue. It's not the bulk of what this dispute is really about. I do think when you look at the competing arguments on each side, we have the two independent grounds, first, that because this operates as an injunction, then under McComb we do think that is the best reading of the court's traditional contempt authority, but also the statutory powers under 105. And while my friends do point out that there are certain exceptions to the discharge that are mandatory, you have to go back to a court in order to prevent those debts from being discharged, there's absolutely nothing that says that 4007 can't be used to provide guidance in cases where this is the case. Breyer, It's something they have to buy a lawyer and it's complicated, 4007. But what I want to know is the court wrote, I guess, in a case called California artificial stone. This is contempt. And it says contempt is a severe remedy and it should not be resorted to where there is a fair ground of doubt. Well, I understand that. That's what the other side is, I think, making a point. So it has a fair ground of doubt. Isn't that good enough? I mean, I know they went further in the Ninth Circuit, but I mean, the government I think is saying, yes, fair ground of doubt. Fair ground of doubt, you don't have to pay contempt. It seems to me that the courts hold and held. Well, it's not, Justice Breyer, and if you look at the Moller decision, that is the founding. That was before, wasn't it? No, it's the same case. And if the government teases two propositions out of that case. First, they say if judges disagree, then there can't be a finding of contempt. Now, they're wrong on that. Well, but that would have to be more general. I mean, here what they say is fair ground of doubt. They do, but what the Court specifically said was not that if there's fair ground of doubt, then contempt is off the table. What they said is that if you're stuck, that was an infringement suit, so you had an original product that was judged to infringe and was bound by the injunction, and then the infringer modified the product. And so then the new dispute is, does this modified product fit within that original injunction? And what the Court said is the patentee has two options. They can seek contempt under the injunction, or they can file a new lawsuit. And the Court said both of those options were available to the patentee, but they advised that it would be most appropriate to file a new suit if there's a fair ground of doubt. That is not a categorical threshold per se rule at all. It actually kept both options open to the patentee. And again, that involves something that's very different than what we have here. That involves a judge-made injunction. When a judge crafts the substantive rules on an ad hoc basis to govern specific disputes, it takes it, that process, out of the democratic process. There is greater concern for confusion and arbitrariness. This is a statutory injunction. Congress passed the language for Section 523 for the exceptions and 524 for the discharge.  So why doesn't it, that bankruptcy judge, have the power to say, well, we think in your case it does, in fact, require considerable damages, because you were on the brink there, and some other case say, no, it's just compensatory damages. In some other case, say, half that, in other words, up to the bankruptcy judge. What do you think of that? Well, again, our position is that the Court does have that discretion. We think there should be a heavy thumb on the scale in favor of full remedial relief, because that is really what's necessary to carry out the discharge. Any time you provide less than full remedial relief, you're not really enforcing the benefits that the debtor was entitled to under the discharge. It's Respondents in the government that are saying at the threshold, if they can conjure up any fair ground of doubt, and I'm not even sure that's true. It's not conjure up. They think, look, I'd say if the person wasn't in good faith, say that, and if he had a fair ground of doubt, maybe there's something special that means he should pay anyway. I wouldn't want to eliminate that, but what? Well, their contention, though, is that the Court would not have discretion. Section 105 is a broad equitable remedy, and it confers broad discretion on the bankruptcy court to carry out the code. I think it's unusual to take that flexible remedy and to cut it off in a categorical way any time a party has some reasonable basis for violating the code, even though there was an even more reasonable basis to know that their action would violate the discharge. If I could reserve the balance of my time. Roberts. Thank you, counsel. Mr. Joshi. Mr. Chief Justice, and may it please the Court. I should first say the ground has somewhat shifted in this case beneath us since the time we filed our brief. Now it appears Petitioner is really not talking about civil contempt, even though that is the question presented on which this Court granted cert. For civil contempt, we think that the text of 524 is what controls. The text of 524 says that a discharge order operates as an injunction, and not to borrow Justice Frankfurter's sort of horticultural analogy, but that brings all the old soil with it, the word injunction. And so the government's position is that the ordinary rules that govern injunctions, injunctive relief, and the discipline for violating injunctive orders in the ordinary civil context apply in the bankruptcy context. Now, the Ninth Circuit below had a bankruptcy-specific rule in which good faith belief, even if unreasonable, could immunize from civil contempt. It appears nobody agrees with that rule anymore, and so I don't need to spend much time on it. But Petitioner's rule also appears to be a bankruptcy-specific rule. And that's our point of disagreement with Petitioner in that. Well, it takes into account the deep policy in the Bankruptcy Code to grant relief to the honest debtor. And I just don't see why it's so hard for — I appreciate that you're representing the largest creditor in the country, but I don't see why it is so hard for a creditor, if he has any doubt, to go in the safe harbor and get a clean ticket, a clean bill of health, instead of just, you know, going after the newly released debtor who's getting a fresh start. He's supposed to get a fresh start, and all of a sudden there are the same people who were, you know, hounding him before. Why is it so hard? If you have — I think if you have a safe harbor, a pretty strict — not that it doesn't have to be strict liability, but a pretty rigorous standard before you can get out of contempt seems to me to make a lot of sense. So a number of responses to that. First of all, I think giving the debtor a fresh start is certainly one of the goals of the Bankruptcy Code, but another goal that's incorporated into the Code and the rules is to balance creditor and debtor rights. And Congress made a judgment that certain debts would not be discharged and that the creditors retain rights to it. So to say the debtor deserves a fresh start somewhat begs the question, a fresh start from what? The debtor does not get a fresh start from a debt that has not been discharged. And so really what you — Roberts Who bears the risk of the fact that there's some doubt about whether a debt is discharged or not? The person who's supposed to get the fresh start or the person who can just quickly jump into the bankruptcy court, say, is this chargeable or not, and not have to worry about it? So we disagree that it's that quick of a jump under Rule 4007 and 7001. You have to file an adversary complaint, and it involves all the traditional rules under the Bankruptcy Rules of witnesses, evidence, et cetera. So I don't think it's that quick, but more important, in terms of who bears a risk and the cost, that sounds a lot like sort of compensatory damages. But for better or worse, in this country we follow the American rule. And really, as this case exemplifies, what Petitioner really wants are attorneys' fees. But that is not traditionally, under the American rule, a form of make-whole remedial relief. It just isn't. Even though in the real world we all understand that you have to pay your attorney, which is a good thing, but and that that's likely to be the bulk of the cost for the debtor who has just emerged from bankruptcy, the fact is it is not a form of make-whole relief. And so, again, we made this point in our brief, and I think Petitioner picks up on it a little bit in the reply and today, which is we agree that under Section 105 a bankruptcy court has the authority to give remedial relief that's short of civil contempt. One of the difficulties, I think, for your side of the case is the decision in McComb, which is rather a hard-line view of civil contempt. It seems to me that one possible answer, and I just want your thoughts on this, is that McComb dealt with a situation where you had a rather contumacious party that had already disobeyed several orders. Would you agree that the standard there may be a little different than in the first instance? I think that's exactly right. As this Court said in Chambers against NASCO, for example, contumacious, vexatious conduct can always be the basis for attorney's fees and perhaps even a contempt citation as well. And we believe that bankruptcy courts would retain that kind of power, but that would be the case. So the extent that they were worried about who bears the burden of risk, it may shift over time based on behavior. That is certainly true. It wouldn't be civil contempt, though, for violating the discharge injunction. It might be contempt or other kinds of sanctions for other related sorts of litigation misconduct or, you know, contumacious or vexatious conduct. I would also hasten to add that we embrace McComb. We think McComb and Stonepaving are perfectly consistent with each other. Stonepaving says civil contempt is a severe remedy and it shouldn't be imposed where there's a fair ground of doubt about whether the injunction actually prohibits the challenged conduct. Now, we can quibble over the words, but I think the key point of Stonepaving is it's an objective test, purely objective. McComb reinforces that by saying that subjective intent of the putative contempt also doesn't matter when imposing civil contempt. Those two rules harmonize perfectly, and that is essentially the rule that the government sets forth today. Kagan Could you explain to me, Mr. Joshi, what the difference is between your rule and the Respondent's rule and whether it matters? Right. So this is one of those grounds that shifted a little from when we wrote our brief. We think the Ninth Circuit's rule clearly is incorrect. Respondent's rule and our rule may, in the vast majority of cases, yield the same results, but I think we want to stand behind a purely objective test. If objectively the creditor's position is reasonable and there is a, you know, there's a basis in law for it, then we would say that's enough. It doesn't matter what the subjective intent is, even the reasonable subjective good faith belief is. It's simply irrelevant to the analysis. Well, is it relevant? I'm sorry. Is it irrelevant? I mean, can subjective good faith be some evidence of objective good behavior? And can subjective bad faith be some evidence of objective bad behavior? Yes. And I was about to get to that exception, and thank you for raising it. And that's all I wanted to hear you say, then, Justice Breyer. Well, two birds, one stone. Right. And what I was going to say is that the factors a finder of fact might have to find subjective good faith belief that's reasonable, for example, here's the case law I looked at, here are the treatises I read, here's what, you know, what traditional practices in bankruptcy that lead to subjective good faith, those are probably the same factors or they overlap substantially with the factors that would be considered in an objective analysis under. So could I understand that a little bit better? Because your statement in your brief confused me a little bit. But you're saying that the facts that lead to subjective good faith would also be indicators of objective reasonableness. You're not saying, as I understand it, although you do say in your brief, you say in your brief that the belief itself is relevant to objective reasonableness. So the belief might have probative evidentiary value to the extent it is highly correlated with those facts which will overlap in the objective analysis. So that may be. So long as it's easy to apply. So, look, I'm not going to stand in your way if you want to close the door that I've left open for the evidentiary value of subjective good faith belief. We think the test should be objective, and that's because that is the test in the ordinary civil context. And because under the Bankruptcy Code, Congress gave no indication that it wanted to deviate from the traditional rules governing injunctions, injunctive relief, and civil contempt to enforce its injunctive orders in the bankruptcy context, or at least this bankruptcy context, from the ordinary civil context, we think the same rules should apply. So just to be clear on this, reasonable good faith belief is the articulation Respondent has. How would you alter that to say reasonable belief? Reasonable belief might work or simply adopt the text in California Artificial Stone Paving and say, where is an objective matter? There's a fair ground of doubt about whether the injunction prohibits the challenge of conduct, then civil contempt is unavailable. How is fair ground of doubt different than a reasonable belief that the discharge order did not apply to the conduct? They may well land in the same place. I think our objection, if you will, is to the word belief. We just think the subjective beliefs are not something that the courts need to or really ought to be probing. So it's reasonable to conclude that the discharge order did not apply to the conduct? I think we wouldn't have a problem with that formulation. Meanwhile, Petitioner's rule, again, in one of the ground shifting, if I heard them all And why not affirm under your position rather than vacate? So we think there are this Court's ordinary practice when announcing a new rule is to remand, especially because none of the lower courts have applied the rule we set forth here today. But there remains some you, of course, have jurisdiction to reach it, but we believe there remains some legal and factual issues to decide. So if you decide that, first of all, no court, the Ninth Circuit didn't rule on whether they had actually violated the discharge injunction, and you would need to decide that in the first instance. Roberts. Thank you, counsel. Mr. Harsky. Mr. Chief Justice, and may it please the Court. We acted reasonably and in good faith. Notwithstanding that, we were held in contempt of court, which included attorney's fees and punitive damages, and that's just wrong in light of the decades of this Court's established precedent on what's required to hold someone in contempt of court. And I think where I'd like to You do think the Ninth Circuit's test needs to be modified? I think the Court should say unreasonable good faith or, I'm sorry, reasonable good faith belief, and that's not exactly what the Ninth Circuit said, so we think the Court should go ahead and clarify that, yes. I'm a little curious why you haven't adopted the government's standard. I've sat down trying to figure out the Venn diagram when they don't overlap, and the one scenario that comes to my mind is, what if some creditor had a not well-founded subjective belief, but he was objectively reasonable, objectively reasonable, but bad faith? He didn't do any work, didn't do any due diligence, he just filed. Turned out he was right, objectively reasonable. That happens. I would have thought you'd want to protect that creditor, but your test wouldn't, and the government's would. And so your test in that respect, at least, is underinclusive compared to the government's, and that surprised me, coming from the creditor's counsel. So help me out with that. Sure. We don't think that there's much daylight at all between our test and the government, particularly in this case, where good faith is undisputed. But I see your question, and frankly, we got the consideration of good faith and bad faith from this Court's decisions, because I think there's, we've talked a lot about the California artificial paving case, but there are other cases where this Court has considered what's appropriate for contempt, the rules that apply to contempt. And in California paving, the Court talked about fair ground of doubt, but in additional case, like- I cannot be entirely clear on this point. But I guess I'm wondering, assuming we were writing on a blank slate, would you disagree with the government's test, and if so, why? An objective standard would be fine by us. We just read the government's cases, especially because contempt is, or I'm sorry, the Court's cases, especially because contempt is an equitable remedy to allow for consideration of good faith and bad faith, and certainly there were some questions about if someone were acting purely in bad faith, is that the kind of thing that could be sanctioned? We think the Court has left that open. But if you wanted to use a purely objective test, that would be fine by us. I think you were going to identify a few of the other cases. Yes. I actually wanted to point the Court, I think, to four cases that we think are particularly relevant. The first is California artificial paving, which has been addressed in great detail. The second is the international longshoreman's case that we talked about, which we think is very important because it talks about what it means to be held in contempt and the prerequisites for contempt. And the Court said contempt is for a violation of a court order by one who fully understands its meaning but chooses to ignore its mandate. Contempt is when you, when the person knows what they're supposed to do and they refuse to do it. And that's just not a case when there's an objective, a reasonable good faith belief. And then the other two cases that I wanted to mention, which we featured in the briefs, are the Watts case and the Maness case. And both were situations in which the Court held that because of a good faith, reasonable belief, the person could not be held in contempt. The Maness case was about an attorney who counseled his client to invoke the Fifth Amendment with respect to a subpoena. And the Court talked about both good faith. We quote the language in our brief, and it talked about reasonableness. The Watts case, I think, is even more interesting because it was a bankruptcy case, and it had to do with there being a State bankruptcy or a State order about the possession of property. And the lawyer in that case relied on the State court order. And then the Federal court held him in contempt. And this Court said he relied on the State court order, he had a good faith, reasonable belief, he can't be held in contempt. And frankly, that's pretty much the same thing as this case. Kagan in the universe of cases that we're talking about, we know that the discharge injunction has been violated. We know that the debtor has suffered harm as a result. Now, let's give you that there was entirely good faith on the part of the creditor. But we still have a question of who should bear the burden of the harm. And from the debtor's perspective, it's like this injunction has been violated, I didn't do anything wrong. As between the victim of the violation and the person who, with all the good faith in the world, perpetrated the violation, why shouldn't we look to the person who perpetrated the violation? I think that's a terrific question. It really gets to a point that we haven't explored much today, which is the difference between remedying the violation of a discharge order and the additional and separate sanction of holding someone in contempt. We agree that if someone violates the discharge order, that they have to comply going forward. And if they, say, obtain property under the discharge order, they would return the property. It's just the regular kind of make whole relief that applies in these circumstances. But what petitioner is asking for here is to hold us in contempt, which is a serious sanction, and to get attorney's fees. And I think as the representative from the government made clear, attorney's fees are not normally considered compensation. In fact, this Court has been crystal clear, because it's gotten opportunities where people have come to it and said, look, as an equitable matter, just give us some attorney's fees. That was the Alyeska case cited in the briefs, also the Baker-Botz case. And the Court said you could be sanctioned under contempt through monetary sanction, right? If a person meets the standard for contempt, they could face monetary sanctions, including attorney's fees. It seems to me that why can't a court say, well, okay, I'm going to fine you because of your contemptuous behavior. And, you know, how much should it be? The amount of the attorney's fees seems to be a pretty reasonable number. It doesn't mean that he's violating the American rule. It means that he's looking for some basis to judge how much the fine should be. Saharsky. I agree with that, I think. It's just the difference between remedying an order violation and holding us in contempt. And holding us in contempt requires a particular finding, that we knew what we were supposed to do and we didn't do it. And in this case, particularly we went to a State court and got an order in our favor, we did not meet that standard. So we completely agree that we have to comply with the discharge order going forward. What we're saying is that the prerequisite that this Court has set out in cases like international longshoremen, California artificial paving, and the others that I mentioned, just hasn't been met. And so just to say But one thing you didn't do, which you could easily have done, is get a ruling from the bankruptcy court, whether the debt was discharged or not. I mean, why didn't you do that? Well, State, as we discussed And you guessed wrong on whether it was. So why didn't you go ahead and just get an order in advance? So we were in State court, as the Court knows from the briefs, there was already a business dispute, and the question that arose, which was the one about the effect of the discharge order, was whether we could get an award of attorney's fees based on our contract. We're already in State court. Everyone agrees that the State court has concurrent jurisdiction to decide that issue. We had a limited time to bring the attorney's fees issue to the Court. To decide which issue? To decide whether that is a discharge debt under the bankruptcy. So I don't know why it would make any sense to have to go to the Federal court when we're already in State court and when it has concurrent jurisdiction to decide the issue, and it decided it in our favor. And I just want to make sure that the Court understands Well, the sense is it's a safe harbor. Well, but the – a couple of – I think there are a couple of answers to that. First of all, I think there's the answer in terms of what Congress intended, and then I think there's a policy answer. So in terms of what Congress intended, as we've discussed, Congress did not require advanced determinations. It anticipated that these questions would be litigated in collection actions. But then second, Congress provided for concurrent jurisdiction, and it specifically recognized that sometimes there are questions about dischargeability of debts that depend on State law. And this is a point that the State's amicus brief, I think, makes very well, about how there can be State law questions about community property and other things that actually some of these exceptions to discharge aren't clear. But just moving beyond that, because I think you're asking about the policy rationale behind this, I think we need to think about if Congress were making a decision about this, what interests it would consider. Because it's always when it's putting together bankruptcy provisions, trying to – trying to balance the various interests. First of all, we start with the interests of debtors. Now, I think it's undisputed that if there were a 4007 proceeding, the debtors would have to pay their own attorneys' fees. Petitioner has not disputed that. So the debtor is not any better off. In fact, debtors have to pay their own attorneys' fees in all of Chapter 7 proceedings unless the attorney was appointed by the trustee. That's the Court's decision from about 15 years ago in Lamey v. U.S. Trustee. So if we're just looking at helping the debtor, going to a 4007 proceeding does not make the debtor better off in terms of attorneys' fees, because he has to pay those attorneys' fees. So then we look at the interests of the creditors. Does it help or hurt the creditors? Well, the States and the Federal Government are coming in and telling you that that's going to seriously chill creditors to have to go through that procedure and not to chill them from collecting on debts that they legitimately can't apply. Well, it's not so much the procedure, it's the standard. The standard that the Petitioners are asking for certainly benefits debtors. Whether it's consistent with the general policy of Fresh Start or not is another story. But it's – and the existence of the safe harbor, I would say, would – makes the rigorous standard more acceptable. Right. And putting aside the arguments that we've already discussed about why Congress didn't want that and why we should do what Congress wants, because this is a statutory interpretation case, just getting back to the policy – I don't think we should do what Congress wants. It's just a question of what they want. Right, right, right. And I just want to get back to the first part of your question, which is to say that this would help debtors. I just want the Court to really think about how is this helping debtors to have this 4007 proceeding. It would provide an answer about the dischargeability of the debt, but it would not make the debtor any better off, because he's paying his own attorney's fees. And then if you look at the harms to creditors, those harms are significant in terms of the chilling of creditors, and the States have discussed that in their amicus brief. And the Federal Government is here to tell you that. And then I think you should also consider the interests of the courts who are going to be burdened by these procedures in a way that Congress didn't intend. Yeah. It does have some chilling effect on creditors, and it doesn't surprise me that creditors don't like that. But that chilling effect makes them ‑‑ since allowing the creditors to proceed on debts that may or may not be dischargeable, it seems to me perfectly reasonable to have them bear the risk, have them make a careful choice. I understand that. And I think that the difference in terms of bearing the risk is the difference between compensation and the additional sanction of contempt. We agree that they bear the risk, and that if they guess wrong, they have to comply with the discharge order. And there has to be makehole relief in terms of compliance going forward and in terms of giving back any property or money that was gotten from the debtor. But what Petitioner is asking for here is contempt. The question presented is about contempt. We were under an order of contempt, and that's a serious, personal, stigmatizing sanction. This Court has said that in multiple cases, the seriousness of contempt. That's not one case, it's many cases. As I understand it, and tell me if I'm wrong, but in the automatic stay context under, what is it, 362K or something? Correct. There, when, if there's a violation of the automatic stay, and there was, you know, and it's sort of an intentional act that resulted in that violation, the violator would be on the hook for any damages that resulted irrespective of the reasonableness of his beliefs. Do you understand that to work that way? And if you do, why shouldn't we have the exact same rule in the two contexts? In other words, why shouldn't we say if you violate the automatic stay, if you violate the discharge injunction, you should be treated exactly the same way under the same standard with respect to the costs that you impose? Right. I think there are really two reasons. There's different textual basis in terms of how Congress addressed this, and then there are different policies underlying it. So in terms of the different textual basis, in our situation, we're talking about the Court's necessary and appropriate authority to enforce something that operates as an injunction, and that pulls in the contempt principles that we've talked about. The fact that Congress was so specific when it wanted to allow this payment of attorney's fees in the context of section 362K, we actually show, we think shows that it's different from this case, because Congress used different language. It wanted to make sure that there would be payment of these fees, so it put that language in there. And then second, we think that there's a significant policy reason to distinguish between the two. The automatic stay is entered at the beginning of the case. It's automatic. It's temporary. It benefits all of the parties. And so we think that reasonably, it could be the case that Congress would decide that that would be, that there would be a more hard and fast rule in that context than in this context. But I think this case really illustrates why in the context of a discharge order, questions will arise, and the contempt is just not appropriate if someone has a reasonable belief or good faith reasonable belief that the discharge order doesn't apply to them. In particular, in this case, just to make sure that it's clear, all we did was go to a State court where we were already in proceedings and be forthright with that State court about the fact that there had been a bankruptcy discharge and that we had a contractual right to attorney's fees and that we weren't sure whether we could get the attorney's fees under that contract. And we asked the court to decide that issue, and Petitioner agreed that the court had jurisdiction under concurrent jurisdiction to decide that issue. And so it just seems to me that it can't be the case that you can hold someone in contempt of court, which is this very serious thing, for asking a court whether the discharge order applies to it. It's contempt of court for violating the discharge order just for asking the court to resolve that open legal question. That just can't be contempt, and we think that that really shows the need for the kind of rule that we and the government have been discussing. Just to follow up on Justice Gorsuch's question from earlier, it sounded like you don't object to an objective standard, but you had rolled in good faith based on some of our cases. Is that accurate? Yes. And I think, you know, it's helpful just to think about the position that courts are in in the normal civil contempt context and what they do when they're faced with a request for contempt. So if someone files a motion for contempt, and what the court typically does and what this court has done in the cases we cited, or in the cases that we cited, the cases that came to this court, the courts also did, was enter an order to show cause. Okay? And the order to show cause says, come to the court and give me your reasons. Explain to me what you did. And then the party comes in and says, well, we can't actually follow the order, or we didn't think the order applied to us. And the court listens to the reasons from the person and basically decides whether they're good reasons or not. And so when we're talking about a good faith, objective belief, or just an objectively reasonable belief, it's just the court listening to the reasons and deciding that they're good enough, that you shouldn't impose the very serious sanctions. Sotomayor When do you think that a reason could not be objectively, an objective ground, that could be still reasonable? Meaning, I understand your answer to Justice Gorsuch, which is that somebody doesn't do research and just says, I don't want to pay, I'm just going to do this. And it turns out later that a ground could exist. You're suggesting that your formulation might not get that person off. So, but the reverse. What could be a reasonable good faith belief if objectively a ground is not, if objectively there's no fair ground of doubt? Well, if I'm understanding the question, you know, I think there's a spectrum, really, of reasonableness. And the case that seems to me like it's per se reasonable is if you go to a court and ask it to resolve the issue in your favor and it says you win, which is what happened in this case. But imagine also that there's circuit precedent that applies to your case. Do you also go to a court? Sotomayor Well, that might catch you up to that proceeding. But how about if the court's decision is so flawed that you decide to fight the appeal on it and don't concede that they were wrong? Well, in this case, you know, we're, our position is consistent with what the state court and the bankruptcy court did. So it's supportive of us and not a fighting situation. But, you know, to answer your question more generally, contempt is an equitable remedy. And it's one where the courts did, you know, what I was suggesting to do, what I was suggesting to Justice Kavanaugh, which is really just consider, like, is your reason a good one or not, you know, tell me your reasons. And those could be a variety of reasons. It could be reliance on precedent. It could be reliance on something a state or federal administrative agency told you. You know, there are a variety of potential reasons. But, you know, really the point we're trying to make is that because contempt is such a big deal and such a serious stigmatizing sanction that you need to leave the door open. And this is the kind of, this question about, you know, when is contempt appropriate, that's something that the district courts and now the bankruptcy courts are fairly familiar with deciding. Because your standard is slightly different or more than slightly than the Ninth Circuits, why shouldn't we vacate rather than affirm, as the Solicitor General suggests? Sure. Well, three answers, really. First of all, the court certainly has the power to go ahead and set out the correct rule and then apply it. It's done that recently, for example, in the air and liquid systems case. So then the question is, is that appropriate in this case? And the answer, we think, is yes. Because under any standard like our standard or the government standards, we think it's pretty clear that reliance on a state court order is one that would be considered reasonable. And there's no dispute at all about good faith in this case. And that's what the Ninth Circuit said that we did and the bankruptcy panel, appellate panel. They said that we relied on the state court order. Under California paving, that's like pretty much per se good faith. And then just the third thing, you know, bankruptcy proceedings are supposed to be quick and inefficient and let people move on with their lives. And this contempt proceeding has been going on since 2011. I think it's fair to say everyone wants to move on with their lives, you know, particularly the spouse of the deceased attorney in this case who hasn't been able to close her husband's estate, even though he passed away in 2013. And so this does seem like a case where it would make sense for the court to just go ahead and apply the rule. I understand, of course, that this is a court of review, not first view, but there's not really work left here for the lower courts to do. And so we would greatly appreciate it if you could affirm. Roberts. Thank you, counsel. Mr. Geiser, three minutes remaining. Thank you, Mr. Chief Justice. First, for the American rule, Congress did not think that these fees were fees as fees or fees as damages. If you look to 362K, it specifically says that courts can award actual damages, including attorney's fees, because they understood that this context, the fees constitute the actual harm. If you look to Rule 4007, this definitely will help debtors. This is an efficient, streamlined, economical proceeding before an expert bankruptcy judge. It imposes far fewer costs on the debtor than litigating in State court before State judges who aren't as familiar with these questions. My friend suggested that the Respondents' case relied on a State court order saying they could collect fees. That's not true. They filed an affirmative fee petition seeking the fees. It was the culmination of the entire litigation in the trial court where the State court finally made a determination which was clearly incorrect. We've outlined in our reply brief why they're clearly incorrect, both legally and factually, in this case. So we'd encourage the Court to look at that, although I do think it makes more sense to send it back down to the Ninth Circuit if you adopt an objectively reasonable standard, which I hope you won't, because it would obliterate the fresh start. This is an objectively reasonable standard is telling any creditor that they can come up with a reasonable basis for collecting, they should absolutely go for it and collect. You either will have the debtor acquiescing, they'll throw up their hands because they don't have the funds to resist, or the debtor will end up resisting and the creditor knows it's a no-cost proposition if they lose. In terms of balancing debtor and creditor rights, Congress did balance debtor and creditor rights. They did it in the Code by creating 19 specific exceptions to the discharge, but when they did impose the discharge for everything else, they meant courts to take it seriously, which is why they created an injunction to protect the discharge. In terms of chilling the effect on the creditors, I think we've already explained why this won't chill any creditor who's legitimately trying to collect a claim. The Rule 4007 proceeding is far more efficient both for the debtor and for the creditor, and there's no reason they can't access that safe harbor if they really do have any doubts about their rights. A final point is that not all contempt orders are created equal. First, this isn't even really contempt. This is a statutory remedial order under Section 105. Everyone can distinguish pretty readily, as a matter of common sense, between a contempt order entered for bad faith conduct and one saying that you violated the Code, you might have done it innocently, you might have done it in good faith, but we know from McComb courts have the authority to enforce that. We know from 105 courts have the power to enter any order necessary or appropriate to carry out the provisions of the Code. One way to carry out the discharge is to make sure that when a creditor's conduct violates the discharge, imposes the exact cost that Congress said debtors were entitled to avoid, the only way to carry out the discharge is, in fact, to enforce the Code by reimbursing the debtor. It certainly doesn't make any sense to tag the innocent victim who also had a reasonable good faith belief that the discharge did apply and was correct with the cost of the creditor's mistake. Roberts.